# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CEDAR RAPIDS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | | |
| Plaintiff, | | No. CR 03-110 |
| vs. | | **ORDER** |
| ARACELI MARTINEZ, | | |
| Defendant. | | |

_____

## *I.  INTRODUCTION*

The matter before the court is Defendant Araceli Martinez's Motion for Competency Hearing (docket no. 174), Motion to Withdraw Guilty Plea (docket no. 160) and Supplemental Motion to Withdraw Plea (docket no. 175).

## *II.  PROCEDURAL BACKGROUND*

On October 14, 2003, the Grand Jury returned an Indictment charging Defendant and her co-defendants, Richard Duran Barragan and Hector Esquivias, with possession with intent to distribute and aiding and abetting the possession with intent to distribute 50 grams or more of a mixture and substance containing a detectable amount of cocaine base (commonly called "crack cocaine") in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 18 U.S.C. § 2.

On October 15, 2003, Defendant was arrested pursuant to a warrant and released on standard pretrial supervision conditions pending trial, which was scheduled for December 8, 2003.  Attorney Joanne Lilledahl appeared as counsel for Defendant. Defendant filed a motion to suppress and a motion to continue trial.  Upon her co-

defendant's motion, Defendant's case was severed for trial. Trial was continued to January 5, 2004. On December 15, 2003, Defendant gave written notice that she intended to enter a guilty plea. Chief Magistrate Judge John Jarvey took Defendant's conditional plea of guilty on December 22, 2003, and filed a Report and Recommendation that the plea be accepted. Defendant was released pending sentencing on the same terms and conditions as governed her release pending trial. Other than objecting about having only three and one-half days to file her objections to the Report and Recommendation to accept her conditional plea of guilty, Defendant's only other objections to the Report and Recommendation pertained to the factual issues that were in controversy in the Motion to Suppress. Defendant did not seek to withdraw her plea. On January 6, 2004, Defendant's motion to suppress was denied. On January 16, 2004, the district court adopted the Report and Recommendation concerning the guilty plea.

The final presentence investigation report was filed on May 10, 2004. Sentencing was set for June 23 and then continued to June 25, 2004. On June 17, 2004, Defendant's attorney asked for a delay in sentencing in order to obtain a mental health examination of Defendant. Defense counsel stated she was "having difficulty communicating with Defendant regarding her sentencing" and had concerns about Defendant's mental health and ability to assist in her own defense. Sentencing was reset for August 17, 2004. Defendant was seen by Kirk Witherspoon, Ph.D., in Moline, Illinois on July 15, 2004.

On July 30, 2004, a Non-Compliance Memorandum was filed by the United States Probation Office setting forth several violations of Defendant's post-plea supervision, including excessive use of alcohol, use of cocaine and failure to notify probation of her arrest for criminal trespass to a vehicle in Winnebago County, Illinois. The pretrial supervisor stated that, in an office visit in the prior week, Defendant expressed ideations of suicide, claimed to have taken an overdose of pills the prior week and simply became

sick and made the statement that she "can't stand the thought of going to jail." Chief Magistrate Judge John Jarvey issued a warrant for her arrest on August 3, 2004, for noncompliance with conditions of post-plea supervision.

On August 7, 2004, Defendant was arrested near Walsenburg, Colorado after she was observed driving a rental car in excess of 101 miles per hour. While the state trooper was preparing the paper work and waiting for the tow truck for the rental car, Defendant got back into the rental car and drove away. She was pursued for approximately seventeen miles at speeds of 110-120 miles per hour until she ran into a police roadblock. Defendant gave the state trooper a false name and claimed to be under the influence of cocaine. Defendant was charged with Vehicular Eluding Creating a Substantial Risk of Bodily Injury by Driving Recklessly (felony); Criminal Impersonation (felony); Unlawful Use of a Controlled Substance (felony); Driving a Vehicle Under the Influence of Drugs (misdemeanor); Driving a Vehicle without a Valid Driver's License (misdemeanor traffic); Reckless Driving (misdemeanor traffic); and Speeding 101 mph in a 75 mph zone (misdemeanor traffic). Defendant pled guilty to Criminal Impersonation on December 13, 2004 and received a time-served sentence of 128 days. Defendant did not appear for sentencing on August 17, 2004 as ordered.

Following the execution of an arrest warrant in Colorado on December 15, 2004, the court set sentencing in the instant case for February 24, 2005. On January 18, 2005, Defendant had her initial appearance in the Northern District of Iowa. Defendant filed a written motion for a substitute attorney, which the court granted. Raphael Sheetz was appointed to represent the Defendant.

In granting the motion for substitute counsel, Chief Magistrate Judge John Jarvey observed the following:

This defendant has practiced an amazing amount of deceit

since she first entered the system.  She admits to lying to her lawyer.  At the January 18, 2005, hearing, she admits that had she told the truth, Ms. Lilledahl would have been better able to represent her.  She was then debriefed on two occasions by government agents.  She lied to them also.  When the police demonstrated defendant's deceit to her lawyer, they sought to have her sign an affidavit indicating which of her former statements were true.  Given her history of deceit, Ms. Lilledahl had the defendant examined to determine her competence.[1]  She was found to be competent.

At one point, the defendant was safety valve eligible.  Her pattern of deceit and her flight from prosecution has dug a hole so deep for her that she now cannot get out.  She wants badly to cooperate.  The court does not know whether there is anyone left who will listen to her.

At the hearing, Ms. Lilledahl expressed a genuine willingness to continue representing the defendant.  Ms. Lilledahl suggested that perhaps the defendant would be better served with an attorney who could start a fresh relationship with the defendant.  Hopefully, the defendant will start telling the truth at some point.  Ms. Lilledahl expressed concern that the defendant's deceit has made it difficult to represent her because Ms. Lilledahl made important strategic choices based upon information that the defendant provided that simply was not true.  The court is convinced that the best course of action here is to substitute counsel.  It is unlikely that anyone can undo the terrible series of events that the defendant placed in motion.

The defendant now wants to withdraw her guilty plea.  In court she said that she was not guilty of distributing crack cocaine.  She claims that she did not know about the

---

[1]The examination referred to is the July 15, 2004 examination by Dr. Witherspoon. (Footnote not in original.)

mandatory minimum punishment when she pleaded guilty and that she had not read her plea agreement. As evidence of her lack of understanding, she asked the court to remember that she hesitated before pleading guilty. Approximately one-fourth of defendants who plead guilty before this court express some hesitance in doing so.

This is a deceitful, manipulative defendant. Still, her pattern of deceit has made it difficult for Ms. Lilledahl to continue to represent her. The court believes that it is in the best interest of justice to appoint substitute counsel to represent her....

Mr. Sheetz asked for a further delay in sentencing in order to determine whether or not grounds existed to file a motion to withdraw plea. The motion was granted, and sentencing was reset to March 17, 2005.

On February 28, 2005, Defendant filed a motion to withdraw her plea of guilty. On March 15, 2005, a Motion for Psychiatric Treatment was filed. The motion for psychiatric treatment was granted, and the sentencing was once again delayed. Defendant was examined a second time by Dr. Witherspoon on March 25, 2005. The United States then requested a medical examination. Defendant requested a competency hearing on April 4, 2005. On April 5, 2005, the court ordered a competency examination. Defendant was transported to the Metropolitan Correctional Center in Chicago, Illinois for a mental health evaluation which was conducted by Michelle Hoy-Watkins, Psy. D. Further delays were experienced because Defendant did not arrive at MCC Chicago until April 20, 2005 and the report from the medical examination by Dr. Hoy-Watkins was not received until July 19, 2005.

A hearing on the Motion for Competency Hearing, Motion to Withdraw Guilty the Plea and Supplemental Motion to Withdraw Plea was held August 9 and 10, 2005. Defendant was personally present with her attorney Raphael Scheetz. Assistant United

States Attorney Dan Tvedt represented the United States. After taking evidence and being fully advised, the court ruled from the bench, denying the motions and indicating that a written order would follow.

## III. ANALYSIS

Federal Rule of Criminal Procedure 11(d)(2)(B) allows a defendant to withdraw a plea of guilty "after the court accepts the plea, but before it imposes sentence if: . . . the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). While Federal Rule of Criminal Procedure 11(d)(2) permits a defendant to withdraw a guilty plea for any fair and just reason, the Rule "does not create an automatic right to withdraw a plea." *United States v. Gamble*, 327 F.3d 662, 663 (8th Cir. 2003) (quoting *United States v. Kelly*, 18 F.3d 612, 618 (8th Cir. 1994)). Rather, "[a] defendant bears the burden of establishing such a justification." *United States v. Embrey*, 250 F.3d 1181, 1183 (8th Cir. 2001) (citing *United States v. Prior*, 107 F.3d 654, 657 (8th Cir. 1997)).

> Once the judgment of conviction on a guilty plea becomes final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary. To be voluntary, the plea must be knowingly and intelligently made. A plea is not 'intelligent' unless the defendant receives 'real notice of the true nature of the charge against him,' and the defendant, his attorney, and the court correctly understood the essential elements of the crime.

*United States v. Morgan*, 230 F.3d 1067, 1070-71 (8th Cir. 2000) (internal citations omitted). Factors a court must consider in determining whether to set aside a guilty plea include: (1) whether the defendant has demonstrated a fair and just reason; (2) whether the defendant has asserted his innocence; (3) the length of time between the guilty plea and the

motion to withdraw; and (4) whether the government would be prejudiced. *Embrey*, 250 F.3d at 1183 (citing *Prior*, 107 F.3d at 657).

In this case, Defendant recently asserted her innocence. The time between the guilty plea and the motion to withdraw is approximately thirteen months (December 22, 2003 to January 18, 2005). Her assertion of innocence came after admitting her guilt under oath at the time of her plea, being debriefed by law enforcement two times, being caught giving inconsistent statements and only after sabotaging her chances of receiving a reduced sentence by her post-plea conduct. There is no evidence of substantial prejudice to the United States if the court were to permit Defendant to withdraw her plea. The only issue in this case is whether there is a "fair and just reason" to permit the withdrawal of the plea. "Rule 11 proceedings are not an exercise in futility. The plea of guilty is a solemn act not to be disregarded because of belated misgivings about the wisdom of the same." *United States v. Woosley*, 440 F.2d 1280, 1281 (8th Cir. 1971).

Defendant claims she has three "just and fair" reasons to set aside her plea. First, Defendant claims that her attorney was ineffective because she failed to advise her of the immigration consequences of pleading guilty. Second, Defendant claims that she received ineffective assistance of counsel because her attorney told her that "boot camp" was possible if she entered a guilty plea. Third, Defendant claims she was not mentally competent at the time she gave her plea because of mental illness and the use of alcohol, cocaine and LSD just prior to her plea.

### A. Immigration Consequences

Defendant's mother, Graciela Garcia Martinez, testified at the hearing that Defendant was born in Mexico. Defendant entered the United States illegally when she was two years old. Graciela Garcia Martinez became a permanent resident alien in

December 1990. In 2002, she filed a Petition for Relative Immigrant Visa on behalf of Defendant which was granted. Apparently, no steps were taken for Graciela or Defendant to secure United States citizenship.

Defendant refused to waive the attorney client privilege at the hearing on the Motion to Withdraw her Guilty Plea, and, thus, Attorney Lilledahl would not answer the question whether she discussed the immigration consequences of pleading guilty with her client. Neither Defendant nor anyone else testified that Attorney Lilledahl did not discuss the immigration consequences of pleading guilty with her. Defendant admitted at the hearing that she told her attorney, pretrial services and the court (under oath at time of plea) that she was a citizen of the United States. Thus, there was no reason for the court or her attorney to inquire any further. At the hearing on the Motion to Withdraw her Plea, Defendant claimed for the first time that she told her attorney, pretrial services and the court that she was a citizen because she believed it to be true.[2] Clearly, counsel's failure to inform a client of immigration consequences of pleading guilty could not constitute deficient performance where Defendant misrepresented that she was a citizen of the United States.

Federal Rule of Criminal Procedure 11 does not require the court to advise a non-citizen Defendant of the immigration consequences of pleading guilty in order to have a knowing and voluntary plea. The Eighth Circuit Court of Appeals previously held that a plea must be entered voluntarily and intelligently with sufficient awareness of the likely consequences of pleading guilty. *United States v. Williams*, 104 F. 3d 213, 216 (8th Cir.

---

[2]Graciela Martinez, Defendant's mother, testified that Defendant would be fired from jobs after three months when the employers checked Defendants's social security number. This suggests Defendant's statements that she did not know she was not a citizen is not truthful.

1997).  However, a defendant need only be informed of the direct consequences of pleading guilty and not the indirect or collateral consequences.  *Id.*  A direct consequence has been defined as one that has a "definite, immediate and largely automatic effect on the range of the defendant's punishment." *George v. Black*, 732 F.2d 108, 110 (8th Cir. 1984).  Although the court could not find any Eighth Circuit Court of Appeals case discussing whether immigration consequences of a plea are deemed to be collateral to the plea, the Eighth Circuit Court of Appeals has considered collateral consequences of a plea in other contexts.  In *United States v. Lambros*, 544 F.2d 962, 966 ( 8th Cir. 1976), the Eighth Circuit Court of Appeals found that the possibility of enhanced punishment in a subsequent prosecution for a narcotics violation because of the current guilty plea is a collateral and not a direct consequence of the guilty plea.  Certainly, deportation is not a direct consequence of pleading guilty because it is not a punishment that the sentencing court has any control over.  A separate proceeding is necessary to determine whether a person should be removed from the United States. *Santos v. Kolb*, 880 F.2d 941, 944 (7th Cir. 1989).

Additionally, indirect support for the proposition that immigration consequences are collateral consequences of a plea of guilty is found in *Gumangan v. United States*, 254 F.3d 701, 706 (8th Cir. 2001).  In that case, the Eighth Circuit Court of Appeals addressed the defendant's 28 U.S.C. § 2255 claim that her attorney's misrepresentation of the likelihood of her succeeding in challenging her deportation caused her guilty plea to be involuntary. *Id.* at 706.  Holding that even if such a misrepresentation occurred, the defendant was not prejudiced, the Eighth Circuit Court of Appeals noted that several other circuits have held that the failure of an attorney to advise a client of even the possibility of deportation as a result of a guilty plea does not constitute ineffective assistance of counsel. *Id.*  Circuits that have considered the issue have held that a defendant's plea is

knowing and voluntary even if the defendant was not aware of the immigration consequences of the guilty plea because deportation is collateral to a conviction. *El-Nobani v. United States,* 287 F.3d 417, 421 (6th Cir. 2002); *Santos*, 880 F.2d at 944-45 (7th Cir. 1989), *cert. denied*, 493 U.S. 1059 (1990); United States v. Yearwood, 863 F.2d 6, 7-8 (4th Cir. 1988); United States v. Gavilan, 761 F.2d 226, 228-29 (5th Cir. 1985); *United States v. Campbell*, 778 F.2d 764, 769 (11th Cir. 1985); *United States v. Russell,* 686 F.2d 35, 39 (D.C. Cir. 1982)*; United States v. Santelises*, 509 F. 2d 703 (2nd Cir. 1975).

Defendant cites a Second Circuit case, *United States v. Courto*, 311 F.3d 179, 189-90 (2nd Cir. 2002), and a district court case, *United States v. Singh*, 305 F. Supp. 2d 109, 115 (D.D.C. 2004), in support of her contention that her plea must be set aside because Ms. Lilledahl did not advise her of the immigration consequences of pleading guilty. The cases cited by Defendant are distinguishable from the instant case because in those cases counsel gave erroneous advice to the client. In the instant case, there is no evidence that Defendant's immigration status was discussed, primarily because Defendant, intentionally or unintentionally, falsely represented that she was a citizen of the United States, and, therefore, neither counsel nor the court warned Defendant about the immigration consequences of pleading guilty. It is Ms. Lilledahl's common practice to warn her clients, who are not citizens of the United States, of the immigration consequences of pleading guilty.[3]

In sum, Defendant has failed to meet her burden of proving her guilty plea should be set aside because her attorney did not advise her of the potential immigration consequences of pleading guilty.

---

[3]Ms. Lilledahl testified that the attorneys in the Federal Public Defender's Office are not permitted to give immigration advice to clients.

## B. *"Boot Camp" Sentence*

Defendant claims that her plea was not voluntary because her attorney mislead her into thinking that she could qualify for the Intensive Confinement Centers ("boot camp") offered by the United States Bureau of Prisons.[4] Defendant also tried to establish that Ms. Lilledahl did not know the length of the qualifying sentence for a "boot camp" sentence.

There was no evidence in the record that Ms. Lilledahl ever discussed the possibility of a "boot camp" sentence with Defendant and thus Defendant's assertion fails for lack of any evidence to support it. Even if such a discussion had occurred, the evidence does not support Defendant's claim that she entered a guilty plea based on her assumption that she would receive a sentence to "boot camp."

During her plea colloquy, Defendant responded under oath as follows:

> THE COURT: Other than the promises made to you in the Plea Agreement, has anyone made any other promises in an effort to get you to plead guilty?
>
> DEFENDANT: No.
>
> THE COURT: Okay. Anybody try to force, threaten, pressure, or coerce you into pleading guilty?
>
> DEFENDANT: No.
>
> ***
>
> THE COURT: Ms. Martinez, you understand that the judge has the ultimate responsibility in

---

[4]In January of 2005, the Intensive Confinement Centers ("boot camp") stopped accepting new inmates, and, upon the graduation of the last class of inmates in May of 2005, the "boot camps" were closed.

|            |                                                      |
|------------|------------------------------------------------------|
|            | deciding the sentence you get, and it may be different than what Ms. Lilledahl anticipates? |
| DEFENDANT: | Yes                                                  |
| THE COURT: | Finally, you cannot withdraw your guilty plea, you can't take it back, simply because you disagree with the Presentence Report or because you disagree with the sentence that you receive, do you understand that? |
| DEFENDANT: | Yes.                                                 |

(Plea Hearing Transcript, December 22, 2003, p. 21, lines 6-15) The court finds Defendant stated, under oath, that there were no other promises made to her to procure her guilty plea. Defendant also responded that her plea was voluntary and that she had decided it was in her best interest to plead guilty. (Plea Hearing Transcript, December 22, 2003, p. 24 lines 6-18; p. 25 lines 9-16) Given such statements, the court concludes that Defendant did not plead guilty in reliance on a promise that she could qualify for the "boot camp" program.

Even though there was no evidence introduced that Defendant was told by her attorney that she could qualify for the "boot camp" program, Defendant in fact could have qualified had she been sentenced within the advisory guideline sentencing range. In fact, that would have been the probable outcome at the time of her plea because Defendant was cooperating with the United States in hopes of receiving a reduced sentence and had no problems on pretrial supervision. Defendant could have qualified for the "safety valve" reduction in sentence pursuant to U.S.S.G. § 2D1.1(b)(6). According to the

recommendations in the plea agreement, Defendant would have had a total offense level of 23 and a criminal history category of Level 1, resulting in a sentencing range of 46-57 months. Had the court followed the parties' recommendations, she would have received at most a sentence of 57 months. Defendant could have qualified for the boot camp program after she completed a portion of her sentence. For direct court commitment to the boot camp or Intensive Confinement Centers, the defendant must have a sentence in the range of 12-30 months. However, even if Defendant was sentenced in the range of 30-60 months she could qualify for a transfer to the boot camp within 24 months of her release date. *See* Http://www.bop.gov//policy/progstat/5390_008.pdf. In her testimony, Ms. Lilledahl demonstrated her understanding of the "boot camp"program eligibility standards was correct.

The court finds Defendant's assertion that her plea was not voluntary because she was erroneously told by her attorney she could qualify for the boot camp program to be totally without merit.

### C. Mental Competency

"It is a well established principle that an incompetent defendant may not make a valid guilty plea." *United States v. Premachandra*, 32 F.3d 346, 347 (8th Cir. 1994)(citing *Godinez v. Moran*, 509 U.S. 389, 396-397 (1993)). "Due process requires that a district court conduct a competency hearing, either upon a motion or sua sponte, whenever there is a sufficient doubt about the defendant's competency." *Id.*; *see also United States v. Hinton*, 218 F.3d 910, 912 (8th Cir. 2000)(holding that due process prohibits the trial and conviction of a defendant who is mentally incompetent); *Vogt v. United States*, 88 F.3d 587, 590 (8th Cir. 1996) (citing *Drope v. Missouri*, 420 U.S. 162, 172 (1975)). This prohibition is the "'substantive' competency principle." *Vogt*, 88 F.3d

at 590. "[This 'procedural' competency] principle operates as a safeguard to ensure that the ['substantive' competency] principle is not violated." *Id.* (quoting *Griffin v. Lockhart*, 935 F.2d 926, 929 (8th Cir. 1991) (internal quotation marks omitted)). The issues arising in procedural and substantive competency claims are similar but distinct: "the issue in a substantive competency claim is whether the defendant was in fact competent to stand trial, but the issue in a procedural competency claim is whether the trial court should have conducted a competency hearing." *Id.* at 590-91.

### 1. Procedural Competency Principle

Procedural due process mandates that a court hold a hearing when there is a sufficient doubt about a defendant's mental competency to stand trial. *Vogt*, 88 F.3d at 590. The Eighth Circuit Court of Appeals has determined that if there is "sufficient doubt" regarding the defendant's competency, the court must order a hearing *sua sponte*. *Griffin*, 935 F.2d at 929. "'Failure to provide an adequate hearing on competency . . . deprives a defendant of his due process right to a fair trial.'" *Id.* at 930 (quoting *Beans v. Black*, 757 F.2d 933, 935 (8th Cir. 1985)). An adequate competency hearing "requires the presence of the defendant and his counsel, the opportunity to be heard, to offer evidence, and to test the evidence." *United States v. Day*, 949 F.2d 973, 982 (8th Cir. 1991).

The precise type and quantity of evidence necessary to establish a "sufficient doubt," and thus mandate a competency hearing, is uncertain. *Griffin*, 935 F.2d at 930 (citing *Drope*, 420 U.S. at 180). The factors which go into the determination of "sufficient doubt" include: "'any evidence of [the defendant's] irrational behavior, [the defendant's] demeanor before the trial court, available medical evaluations, and whether trial counsel questioned the defendant's competency before the court.'" *Vogt*, 88 F.3d at

591 (quoting *Day*, 949 F.2d at 982). "[A]n express doubt by the attorney of the accused is a legitimate factor to consider, but alone is not enough to create sufficient doubt." *Griffin*, 935 F.2d at 930 (citing *Drope*, 420 U.S. at 177 n.13). The extent and quality of a defendant's participation in court proceedings is highly relevant to the issue of whether there exists "sufficient doubt" as to the defendant's competency to stand trial. *Day*, 949 F.2d at 983. "'Even when a defendant is competent at the commencement of his trial, a trial court must always be alert to circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial.'" *United States v. Robinson*, 253 F.3d 1065, 1068 (8th Cir. 2001) (quoting *Drope*, 420 U.S. at 181).

Looking retrospectively, the question of whether the court was required to hold such a hearing "'depends on whether [the defendant's] mental competency was in question at the time of his plea.'" *Weisberg v. Minnesota*, 29 F.3d 1271, 1276 (8th Cir. 1994) (quoting *United States v. Hollis*, 718 F.2d 277, 280 (8th Cir. 1983)). "Absent some contrary indication, state and federal trial judges are entitled to presume that defendants are competent." *Day*, 949 F.2d at 982 (citing *Smith v. Armontrout*, 865 F.2d 1502, 1506 (8th Cir. 1988). Thus, the defendant bears the burden of demonstrating the trial judge "failed to see the need for a competency hearing when, based on the facts and circumstances known to [her] at the time, [she] should have seen such a need." *Day*, 949 F.2d at 982 (citing *Drope*, 420 U.S. at 174-75 and *Collins v. Housewright*, 664 F.2d 181, 183 n.6 (8th Cir. 1981)).

In this case, there was no indication that Defendant's competency should have been questioned, let alone an indication rising to the level of a "sufficient doubt" about her competency at the time she gave her plea.

## 2. *Substantive Competency Principle*

Substantive due process prohibits a mentally incompetent defendant from being tried and convicted. *Vogt*, 88 F.3d at 590; *Premachandra*, 327 F.3d at 347 (holding that an incompetent defendant can not enter a valid guilty plea). In the context of a defendant's substantive due process claim that he was tried and convicted while mentally incompetent, the defendant bears the burden of demonstrating by a preponderance of the evidence that he was incompetent at the time of trial. *Id.* at 591. "[N]ot every manifestation of mental illness demonstrates incompetence to stand trial. . . . Similarly, neither low intelligence, mental deficiency, nor bizarre, volatile, and irrational behavior can be equated with mental incompetence to stand trial." *Id.* (quoting *Medina v. Singletary*, 59 F.3d 1095, 1107 (11th Cir. 1995)) (quotation marks omitted). Instead, the Eighth Circuit Court of Appeals has determined the following:

> Due process mandates that [the defendant is] entitled to consult with his lawyer with a *reasonable* degree of rational understanding and therefore be accorded a fair trial – not a perfect trial. Although [the defendant's] cognitive deficits may have placed additional responsibility on his counsel to ensure [the defendant's] understanding of the process, it certainly does not establish that he was incompetent to stand trial.

*United States v. Robinson*, 253 F.3d 1065, 1068 (8th Cir. 2001).

Defendant claims that she was not mentally competent to give her plea on December 22, 2003. Defendant primarily relies upon the opinion of Dr. Witherspoon, given about six months after her plea, that Defendant was "experiencing very considerable impairment, that is, compromised psychological functioning in all realms; emotional, interpersonal, behavioral, and cognitive."[5] Defendant makes various other claims in her pleadings,

---

[5]Dr. Witherspoon gave this opinion of Defendant's current mental status following

(continued...)

including that at the time of the plea she was under the influence of alcohol, LSD and cocaine.

It is significant to the court that at no time prior to the plea hearing had anyone questioned the mental health of Defendant. At the December 22, 2003 plea hearing, Defendant responded under oath that she had never suffered from or been treated for mental illness. (Plea Hearing Transcript, December 22, 2003, p. 4, lines 18-20) She also responded that she had never suffered from or been treated for addiction to controlled substances. (Plea Hearing Transcript, December 22, 2003, p. 4, lines 21-23) When the court asked her if she was currently under the influence of any drug, medicine or alcohol, she responded that she was only taking pain medicine which did not interfere with her ability to understand. (Plea Hearing Transcript, December 22, 2003, p. 4, line 24 - p. 5, line 13) During the plea hearing, Defendant responded appropriately. Numerous times Chief Magistrate Judge John Jarvey asked if she understood and if she had questions. Defendant consistently stated that she understood and, although she occasionally hesitated, she had no questions. At one point she became confused because the court explained that she was subject to a mandatory minimum sentence of ten years and she had been told that if she qualified she would have the benefit of a "safety valve" reduction under U.S.S.G. § 2D1.1(b)(6), which would allow the court to sentence her below the mandatory minimum. That was clarified by Chief Magistrate Judge John Jarvey and Defendant stated that she understood there was no guarantee that she would receive the benefit of the "safety valve." In short, the plea proceeding fully complied with Federal Rule of Criminal Procedure 11 and there was nothing that occurred during the plea suggesting in any way that Defendant was not competent to give a plea. In fact, Chief Magistrate Judge John

_____

[5](...continued)
a two-hour examination on July 15, 2004.

Jarvey found just the opposite. (Plea Hearing Transcript, December 22, 2003, p. 26, line 10 - p. 27, line 5) Ms. Lilledahl testified if she is ever concerned about a client's mental capacity to give a plea due to the ingestion of drugs or alcohol she alerts the court that there is a problem and, perhaps, requests a continuance of the proceeding.

Supervising United States Probation Officer John Zielke testified that he first had contact with Defendant on October 15, 2003 when he interviewed her at the Linn County Jail for her pretrial services report. He recalled she was very upbeat even though she was in custody on a federal drug charge. Defendant was supervised out of the United States Probation Office in Rockford, Illinois where she was tested for controlled substances on December 8, 2003. The test was negative for methampethamine, marijuana, cocaine, opiates and PCP. On December 22, 2003, the day of Defendant's plea in the instant case, Defendant was drug-tested in the United States Probation Office in Cedar Rapids, Iowa. The test was negative for methampethamine, marijuana and cocaine. Because there was no indication Defendant was under the influence of alcohol Defendant was not given a breathalyzer test. The December 8, 2003 test was sent on to the lab for confirmation but the December 22, 2003 test was not. Mr. Zielke testified that the United States Probation Office in Cedar Rapids has never had a discrepancy in the tests they do with noninstrumented drug tests and the lab results in terms of a test showing negative and then coming back from the lab as a positive.

Two psychologists gave opinions as to the mental condition of Defendant at the time of the plea on December 22, 2003. Those opinions were given retrospectively. Dr. Witherspoon assessed Defendant on this issue on March 25, 2005[6] and Dr. Hoy-Watkins

---

[6]Defense counsel inferred at the hearing that Dr. Witherspoon performed a competency evaluation on July 15, 2004 (about six months after Defendant's guilty plea)
(continued...)

assessed Defendant on this issue beginning on April 20, 2005. With respect to their opinions, neither psychologist testified "to a reasonable degree of scientific certainty." Dr. Witherspoon's approach to addressing the issue of Defendant's competency in December of 2003 was to assess Defendant's current mental status and extrapolate. He stated, "it is recommended that [Defendant's] apparent functioning at the time of a prior plea agreement be regarded as insufficiently competent as well, that functioning additionally compromised by greater specific knowledge deficits and by reported inebriation with mood altering drugs and alcohol." Dr. Witherspoon did not correctly articulate the legal standard for competency nor express his opinion within the parameters of that standard. Dr. Witherspoon brushed off the objective evidence of Defendant's state of mind on December 22, 2003, including the plea colloquy with the court and the fact that no one, including her attorney, the court or court personnel, observed any behaviors that suggested any incompetence, preferring instead to rely nearly exclusively on Defendant's claims. Apparently, Dr. Witherspoon did not consider how unusual it would be for an incompetent person to be able to relate with such specificity what she was told and what occurred some fifteen months earlier. Dr. Witherspoon did not consider the observations and conclusions by Chief Magistrate Judge John Jarvey. He did not consider the observations and drug testing done by the United States Probation Office leading up to and on the day of the plea. Even when considering her present mental health as a basis for extrapolating backwards fifteen months, Dr. Witherspoon did not consider the Defendant's pattern of lying, deceit and malingering, as shown by her interaction with the court, her attorney and law enforcement, and did not consider the objective test results showing malingering. He

---

[6](...continued)

looking retrospectively to the date of the plea, but there is no support for that assertion in Dr. Witherspoon's report of that date or his testimony.

failed to consider his own clinical impression and conclusions from July 2004 that she was "faking bad" or malingering on her test profiles and expressing concern that she was in trouble with the judge and her attorney for lying.

The court finds the objective approach of Dr. Hoy-Watkins to be more reasonable. Although she also attempted to perform a retrospective evaluation, Dr. Hoy-Watkins looked carefully at the available information from December 22, 2003, and arrived at her opinion of competency at the time of plea in that fashion. Undoubtedly, she also factored in the current test data and observations which demonstrated Defendant's malingering, dishonesty and deceit. The information she considered relevant was the plea transcript, information gathered by the United States Probation Office and Teller County jail records. In analyzing the plea transcript, Dr. Hoy-Watkins opined there was no indication that Defendant did not fully understand the proceedings. Dr. Hoy-Watkins recorded Defendant's statement that she wanted to withdraw her plea because her "attorney lied to her" and because she made "a mistake."

With regard to Defendant's current mental status, the court credits the evaluation by Dr. Hoy-Watkins. Dr. Watkins performed a significant, objective evaluation of Defendant. On all test profiles Defendant was found to be malingering. Dr. Hoy-Watkins also critically analyzed Defendant's statements on the subjects of mental health, substance abuse history, alleged past suicide attempts and alleged physical abuse by her boyfriend and found them to be inconsistent. Throughout Defendant's stay in the Metropolitan Correctional Center in Chicago there was no overt behavior suggestive of a thought disorder or psychosis, and Defendant was found to be of at least average intelligence. The results of the objective testing for current ability to assist counsel led Dr. Hoy-Watkins to conclude that there is "minimal to no impairment in her logical reasoning and her ability to assist counsel; and minimal to no impairment in her ability to appreciate her own legal

situation and circumstances." Certainly, Defendant is emotional and depressed about her legal situation, which is understandable. Her depression is currently being treated with medication.

In contrast, Dr. Witherspoon recommended that Defendant is not competent to proceed. One of the alleged deficits is her inability to assist her attorney at the sentencing hearing. It is not clear to the court what benchmark he used in concluding that Defendant had "marked specific information deficits with respect to courtroom participants and procedures." (Defendant's Exhibit 2, p. 11). His report shows he used an instrument designed for retarded persons. Dr. Witherspoon admitted that after interviewing Defendant on March 25, 2005, Defendant understood: why she was arrested; what was said to the police; the charges against her and the attendant criminal penalties; the difference between a plea of guilty or not guilty; the role of her lawyer; the authority the court had over her; the meaning of "perjury" and "double jeopardy"; the meaning of evidence; the evidence against her; the meaning of a plea bargain; she could help her attorney represent her by being truthful; and the confidentiality that exists between her and her attorney. According to Dr. Witherspoon, Defendant explained that she knew what was said to the police the night of the entry into the hotel room and denied that police were granted permission to enter the hotel room. The only specific things Dr. Witherspoon could point to in support of his determination was that Defendant was unclear about the role of the prosecutor and, with the exception of her own attorney, all other trial participants. Defendant stated that, if a witness was being untruthful, she would tell her attorney and that, if a witness said something she did not understand, she would ask her lawyer. She told Dr. Witherspoon that she expected that the co-defendants might testify against her and lie to get a reduction in their sentences. On cross-examination, Dr. Witherspoon admitted that Defendant generally understands what the court does, the facts

of her case and what penalties she is facing. He stated Defendant could assist her attorney if she were further educated and was not under the influence of drugs and alcohol. Dr. Witherspoon's general conclusion that the Defendant "also appears to lack sufficient skill to effectively assist defense counsel" lacks support in the record. All examiners, including him, have found Defendant to be of at least average intelligence and no one has diagnosed any deficits in her cognitive functioning. Additionally, when Chief Magistrate Judge John Jarvey explained various concepts to her at the time of her plea, she indicated that she understood.

The court finds there is no credible evidence that Defendant suffered from a mental disease or defect on December 22, 2003, such that she was unable to give a knowing and voluntary plea and assist her attorney with her defense. The "fair and just reason" standard is liberal; however, the plea of guilty cannot be disregarded merely because of "belated misgivings about the wisdom of entering the same." *United States v. Thompson,* 906 F.2d 1292, 1298 (8th Cir. 1990).

On both August 9 and 10 of 2005, the court observed Defendant in the courtroom during the hearing. Although not a licensed psychologist, after nearly twelve years on the bench, the undersigned is a professional observer of human behavior. During the hearing, Defendant exhibited no unusual behaviors. She appeared relaxed and pleasant. Each time Defendant observed the undersigned glancing in her direction, Defendant smiled. During the proceedings, the courtroom deputy inadvertently called a wrong number when attempting to reach Dr. Hoy-Watkins. Defendant laughed at the wrong number as did the other courtroom participants. Also, during her testimony, although it was of short duration, Defendant was responsive to the questions asked by her attorney and the prosecutor. There was no indication that Defendant suffered from a mental disease or defect or was at all confused about the hearing.

The court also finds that there is no credible evidence that Defendant currently suffers from a mental disease or defect such that she is unable to assist her attorney. The court concludes that Defendant's attempts to portray herself as incompetent with respect to the December 22, 2003 guilty plea and as incompetent for current adjudication are part of Defendant's continuing pattern of dishonest and deceitful behavior in order to avoid a prison sentence.

## V. CONCLUSION

**IT IS SO ORDERED.**

1. Defendant's Motion for Competency Hearing (docket no. 174) is DENIED.

2. Defendant's Motion to Withdraw Guilty Plea (docket no. 160) and Defendant's Supplemental Motion to Withdraw Plea (docket no. 175) are DENIED.

**3.** The sentencing hearing will proceed as previously scheduled.

**DATED** this 7th day of September, 2005.

LINDA R. READE
JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA